THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SABU GANETT, Appellant.

Fourth Department, May 22, 1979

**APPEARANCES OF COUNSEL**

*Sheldon M. Markel* for appellant.

*Edward C. Cosgrove, District Attorney (Ernest Anstey* of counsel), for respondent.

**OPINION OF THE COURT**

DILLON, P. J.

The defendant was convicted upon a jury trial of criminal

sale of a controlled substance in the third degree (Penal Law, § 220.39). He raises three issues on appeal which arise, respectively, from: (1) the denial of motions to dismiss the indictment based upon the inadequacy of evidence before the Grand Jury to identify the person charged with the crime (see CPL 190.65, subd 1) and because it accuses a person other than the defendant; (2) the procedure employed by the court for the selection of the trial jury; and (3) a denial of a motion to dismiss the indictment based upon undue delay between the date of the commission of the crime and the date of the indictment.

After a protracted investigation by the Erie County Sheriff's Department aimed at sellers of narcotics, defendant and several others were indicted by a Grand Jury on August 20, 1976 and were arrested on the following day. The indictment in this case accuses "Sabu Ganett" of a sale of heroin on March 12, 1976 to Deputy Sheriff Joseph Petronella. The sole testimony before the Grand Jury relating to the identification of the defendant was that of Petronella, as follows:

"Q. Now, Mr. Petronella, have you ever had occasion to meet a man by the name of Sabu Ganett?

"A. Yes, I did.

"Q. And did you have occasion to meet this man on March 12, 1976?

"A. Yes.

"Q. At approximately 5:35 P.M. near the intersection of Hickory and William Streets in the City of Buffalo?

"A. Yes.

"Q. And what happened when you saw that man on that date?

"A. There was a heroin transaction in which the defendant handed me a tinfoil package containing heroin and I handed the defendant $100 in official funds."

Neither the Grand Jury minutes nor the indictment contains any other description of the person intended by the Grand Jury to be indicted. At trial, the defendant denied commission of the crime and testified that his name was "Sabu Gary"; that he was never known by the name of "Ganett"; and that he was never known by any other name. On appeal the defendant characterizes as the "essential point" in the case his claim that there was an insufficient showing that the Grand Jury found reasonable cause to believe that

Sabu Gary committed the offense. He thus contends that he was not lawfully indicted and that the court was without jurisdiction to place him on trial for the crime.[1] We disagree.[2]

The New York State Constitution provides that no person shall be held to answer for a felony "unless on indictment of a grand jury" (art I, § 6). An indictment is an accusation that a specific person has committed the crime charged. Where a defendant has been indicted under a fictitious name because his true name was unknown, or where some person other than the intended defendant is accused in the indictment, the instrument may be amended upon discovery of the true name of the person the Grand Jury intended to indict (*People v Bogdanoff*, 254 NY 16, 30). Though evidence extraneous to the indictment may be necessary to identify a defendant who is insufficiently or erroneously described in the indictment, "it seems clear that an accused cannot claim that he is held without indictment where such evidence proves that he is the person the grand jury intended to accuse, and the record is amended accordingly" (*People v Bogdanoff, supra,* p 30).

Here the defendant's contention that the indictment was a blank authorization to the police to arrest any person the police might choose is wholly without merit. The Grand Jury obviously intended to indict a specific person and did not intend to delegate that function to anyone else. The clear purpose of the Grand Jury was to indict the person who sold heroin to Joseph Petronella on March 12, 1976, said person having been identified to it by Petronella as "Sabu Ganett". No other reasonable interpretation may be drawn from the Grand Jury testimony of Petronella. That subsequent to the indictment, the true name of the defendant was learned to be Sabu Gary does not alter the Grand Jury's intention. In these circumstances, the trial court erred in denying the vigorously

1. We note that defendant initially moved to dismiss the indictment pursuant to CPL 210.30. The denial of a motion made under that section is not reviewable upon an appeal from a judgment of conviction based upon legally sufficient trial evidence (CPL 210.30, subd 6; Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 210.30, pp 356-357; see *People v Howell,* 3 NY2d 672; cf. *People v Jackson,* 18 NY2d 516). The rule that an indictment must be based upon legally sufficient evidence is founded not upon constitutional principles but upon statute (CPL 190.65) which the Legislature may, as it did, delimit by another statute (CPL 210.30, subd 6) *(Matter of Miranda v Isseks,* 41 AD2d 176).

2. No claim is made here that the trial evidence was legally insufficient. The identity of the perpetrator of the crime was vigorously contested at trial and resolved by the jury.

opposed motions of the People to amend the indictment to substitute the name Sabu Gary for Sabu Ganett (CPL 200.70; see CPL 210.25).

The defendant's reliance on the *Connor* case as it proceeded through State and Federal courts *(Commonwealth v Doherty,* 353 Mass 197; *Connor v Picard,* 434 F2d 673; *Picard v Connor,* 404 US 270; *Connor v Commonwealth,* 363 Mass 572) requires comment, if only because such reliance is misplaced. There it was finally held that before the name of the accused in an indictment may be corrected by amendment, there must be a "warrantable inference", giving consideration to both the description in the indictment and the evidence given to the Grand Jury, that the Grand Jury intended to indict the defendant *(Connor v Commonwealth,* 363 Mass 572, 577, *supra).* The indictment was of "John Doe, the true name and a more particular description of the said John Doe being to the said Jurors unknown". Indeed, the indictment could not have been drawn in any other fashion since there was no evidence before the Grand Jury that it was the defendant Connor, or any other specific person, who had committed the offense. "[T]he Commonwealth did not meet its burden of showing, from the indictment or otherwise, that Connor was the 'John Doe' in the indictment intended by the grand jury" *(Commonwealth v Gallo,* 2 Mass App Ct 636, 640). It is as clear from the holding in *Connor* as it is from the holding in *Bogdanoff (People v Bogdanoff,* 254 NY 16, *supra),* that it is the intention of the Grand Jury which controls, and thus viewed, the rule is indistinguishable from that in *Commonwealth v Gallo (supra),* and several other New York cases (see *People v Jackson,* 46 NY2d 721; *People v Fitzgerald,* 45 NY2d 574; *People v Soto,* 44 NY2d 683; see, also, *People v Iannone,* 45 NY2d 589).

The next point to be considered concerns the defendant's absence from bench conferences which occurred during jury selection. The procedure which pertained during jury selection was as follows: the Trial Judge, in open court, directed a series of questions to the prospective jurors, designed to search out bias or prejudice; if any juror had an answer to give, he was directed to approach the bench where further discussion was had between the court and the prospective juror, in the presence of both counsel. The defendant, although present in court, was not a party to these bench conferences. Since no record was made of the bench conferences, for the purposes of discussion we accept the statement of defendant's counsel

"that despite the request of counsel for the accused, the accused himself was excluded from the conferences" and counsel's further statement that the court did not grant his request that the bench conferences be recorded.[3] We note, however, that despite ample opportunity to have done so, no formal objection to the procedure used on *voir dire* was interposed by defendant's counsel.[4]

The defendant further asserts that of the 70-member jury panel, the court excused 17 jurors as a result of the bench conferences; 11 for reasons that might be interpreted to avoid prejudice to defendant, 4 for reasons that might be interpreted to avoid prejudice to the People and 2 for reasons of inconvenience or hardship to those jurors. Since retaining a juror who has asked to be excused for compelling personal reasons would create a risk that an embittered juror might not strictly adhere to his obligations, we conclude that all 17 prospective jurors were excused for reasons which were designed to avoid prejudice.

■ The questions asked by the court prior to the bench conferences were squarely directed to the matter of qualification to serve as a juror. It was after asking those questions that the court then asked each juror if he had any answer to give and if so, the juror was told to approach the bench. In sum, the 17 prospective jurors, after indicating in open court and in the presence of the defendant, that they might be unfair, prejudiced or otherwise disqualified, were excused for cause, as required by CPL 270.15 and subdivision (a) of section 20.10 of the Rules of the Administrative Board of the Judicial Conference (22 NYCRR 20.10 [a]). Such determinations are solely the province of the trial court and we find no merit to the argument that the presence of the defendant at the bench conferences, fully and competently represented as he was by trial counsel, might have resulted in the qualification of a juror otherwise found disqualified by the court. As noted by the Supreme Court of the United States, it is not to be found in its decisions "that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the

---

3. This is not to say that we reject the Trial Judge's analysis of the proceedings as reflected in his memorandum which has been submitted as part of the record on appeal.

4. On argument of the appeal, defendant's counsel commended the trial court for employing this method of jury selection; his claim of error relates only to the absence of the defendant, who was in the courtroom but not directly in front of the bench.

benefit but a shadow." *(Snyder v Massachusetts,* 291 US 97, 106-107.) This is particularly so where, as here, no claim is made that defendant or his counsel objected to the excusal by the trial court of any particular juror, nor is any claim made that the jury as finally impaneled included any unfair or partial jurors. (See *People v Mullen,* 44 NY2d 1.)

We thus conclude that the defendant has failed to demonstrate that he suffered any prejudice by virtue of the method employed by the trial court in jury selection. This is not to say, of course, that in circumstances where prejudice is demonstrated, the exclusion of the defendant from that process will not constitute reversible error. It is vital that the defendant have the opportunity personally to view and scrutinize the panel of prospective jurors (cf. *Lewis v United States,* 146 US 370) and to confer and participate with his counsel in selection of the trial jury (see *United States v Chrisco,* 493 F2d 232). It would have been the better, if not the required practice, for the court to have insured the personal presence of the defendant at the bench conferences (cf. *Maurer v People,* 43 NY 1). Even assuming an irregularity, however, in the absence of a showing of prejudice, it is well settled that mere irregularities in the drawing of grand and petit jurors are not a ground for reversing a conviction *(People v Kruger,* 302 NY 447, 450, citing *Cox v People,* 80 NY 500, 511; *Ferris v People,* 35 NY 125, 129; *People v Prior,* 294 NY 405, 411-412, mot for rearg den 294 NY 975; *Rawlins v Georgia,* 201 US 638, 640).

The final point raised by the defendant relates to his claim of prejudice resulting from the five and one-half month delay between the date of the offense and the date of his arrest.[5] Although we do not conclude that the defendant has demonstrated actual prejudice, the language of the Court of Appeals in *People v Singer* (44 NY2d 241, 253-254) is particularly appropriate to this issue:

"We have long held that 'unreasonable delay in prosecuting a defendant constitutes a denial of due process of law' *(People v Staley,* 41 NY2d 789, 791; see, also, NY Const, art I, § 6). An untimely prosecution may be subject to dismissal even though, in the interim, the defendant was not formally accused, restrained or incarcerated for the offense (see, e.g., *People v Winfrey,* 20 NY2d 138; *People v Wilson,* 8 NY2d 391; *People v*

---

**5.** Since this issue was not specifically raised by the defendant until a motion after verdict, it may be said to be untimely *(People v Mintz,* 38 AD2d 943). We do not decide the issue on that basis, however.

*Staley, supra).* Thus the State due process requirement of a prompt prosecution is broader than the right to a speedy trial guaranteed by statute (see CPL 30.20; see, also, CPL 30.30) and the Sixth Amendment (see *United States v Marion,* 404 US 307, *supra; Klopfer v North Carolina,* 386 US 213). In some respects the State rule is less rigid in its application than the right to due process recognized under the Federal Constitution because, in a proper case, a lengthy and unjustifiable delay in commencing the prosecution may require dismissal even though no actual prejudice to the defendant is shown *(People v Staley, supra; People v Winfrey, supra).* * * *

"Generally when there has been a protracted delay, certainly over a period of years, the burden is on the prosecution to establish good cause *(People v Prosser,* 309 NY 353; see, also, *People v Winfrey, supra; People v Staley, supra).* There is, of course, a need to investigate to discover the offender; to eliminate unfounded charges and to gather sufficient evidence to bring the case, or related cases, to court. Thus a determination made in good faith to defer commencement of the prosecution for further investigation or for other sufficient reasons, will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense *(United States v Lovasco, supra).* But if commencement of the action has been delayed for a lengthy period, without good cause, the defendant may be entitled to a dismissal although there may be no showing of special prejudice *(People v Staley, supra; People v Winfrey, supra)."*

Thus if there was a lengthy and unjustifiable delay here between the commission of the crime and the actual commencement of the prosecution, the defendant may be entitled to a dismissal without a showing of prejudice; but even where some prejudice has been demonstrated, a dismissal is not warranted if it is established that prosecution was deferred in good faith for good cause. In assessing justification for the delay, consideration should be given to the gathering of evidence in "related cases", as well as the defendant's case *(People v Singer, supra,* p 254).

The investigatory method employed here, and in quite common use in narcotics cases, necessarily results in delay between the criminal event and arrest. The record clearly demonstrates that there was a long-term investigation by a deputy sheriff and a confidential informant, working as a team to discover as many sellers of narcotics as possible, and

that their continued anonymity was vital not only to the success of the investigation but to their own safety as well. It thus being apparent that there was reasonable justification for deferring the arrest of the defendant, there is no need to remit the matter for a hearing on that issue (see *People v Lugo,* 62 AD2d 1024; *People v Townsend,* 38 AD2d 569). In any event, the five and one-half month delay here is hardly extreme.

Accordingly, the judgment should be affirmed.

CARDAMONE, CALLAHAN, DOERR and MOULE, JJ., concur.

Judgment unanimously affirmed.