THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VASIL LESIUK, Appellant.

Third Department, September 13, 1990

### APPEARANCES OF COUNSEL

*D. J. & J. A. Cirando (John A. Cirando* of counsel), for appellant.

*George M. Dentes, District Attorney (James H. Church* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

The indictment against defendant for sale of marihuana was handed up in November 1987 and arose out of an alleged transaction occurring December 4, 1986 between him and a State Police undercover officer who was introduced to defendant by a police informant named Charles Harvey. Defendant was not arrested on the charge until some eight months after the sale. Defendant moved to dismiss the indictment upon the ground, *inter alia,* that he was denied due process by the delay between the commission of the crime and his arrest, during which, he claimed, a witness to his meeting with the officer and the informant died. County Court held a hearing on the issue, following which it denied defendant's motion.

At the trial of the indictment, defendant testified that he was introduced to the undercover officer by the informant Harvey but that he refused their request for drugs. The jury returned a guilty verdict. Prior to sentencing, defendant moved to set aside the verdict on various grounds, among which was that he had newly discovered evidence consisting of an affidavit of Harvey confirming defendant's version of what happened during the encounter with the undercover police officer. Harvey was not available to be called as a witness by either side at the trial, despite the prosecution's efforts to locate him. County Court denied the motion to set aside the verdict and sentenced defendant as a predicate felon to an indeterminate period of imprisonment of 3 to 6 years. Additionally, following a probation violation hearing, defendant was resentenced upon a previous drug-related conviction to a consecutive term of 3 to 9 years. These appeals followed.

■ Of the various points raised on defendant's appeals, only two merit discussion. The first of these is the contention that the eight-month prearrest delay violated his right to due process. The evidence at the pretrial hearing on this issue was that the officer to whom the marihuana was sold was involved in undercover operations in both Broome and Tompkins Counties, extending into October 1987, and that these ongoing investigations would have been prematurely compromised by any earlier arrest of defendant on charges necessarily preferred by the undercover officer. Consequently, even if we were to accept defendant's dubious claim concerning the existence of an eyewitness to the transaction who died during the interim period, the People amply established a reasonable justification for deferring the arrest of defendant (see, People v Singer, 44 NY2d 241, 244; People v Ganett, 68 AD2d 81, 88, affd 51 NY2d 991).

■ The remaining issue of substance is whether the People's failure to produce the informant Harvey to testify denied defendant a fair trial. The record clearly establishes that, at the time of trial, Harvey was not under the People's control, that his unavailability was not in any way attributable to acts or omissions of the prosecution and that reasonable, good-faith efforts had been expended to produce him. Therefore, contrary to defendant's contention and the position of the dissenters, Harvey's statement over the telephone to the police officer who sought his appearance that "[y]ou are not going to like my testimony" and his posttrial affidavit facially supporting the defense are not sufficient to require reversal as a matter

of law. The case of *People v Jenkins* (41 NY2d 307), the foundational case regarding the effect of the unavailability for trial of a police informant, holds that when diligent prosecutorial efforts to produce an absconding informant "have been exercised * * * a defendant must satisfy a *higher standard of materiality* and relevance" to achieve reversal or dismissal *(supra,* at 312 [emphasis supplied]). In such case, a defendant must "satisfy the higher burden of *establishing a likelihood* that [the informant's] testimony would *tend, to a significant degree,* to exculpate [him]" *(supra,* at 312 [emphasis supplied]). Moreover, the *Jenkins* rule was expressly derived by analogy from United States Supreme Court doctrine regarding the failure of the prosecution to furnish a defendant exculpatory evidence in its possession, citing *United States v Agurs* (427 US 97) and *Brady v Maryland* (373 US 83) *(see, People v Jenkins, supra,* at 311).

It is noteworthy that the *Jenkins* court cited to the portion of *United States v Agurs* (427 US 97, 110-111, *supra)* wherein a heightened standard of materiality is imposed upon the defense when the prosecution is innocent of the misconduct of failing to comply with a request for specific exculpatory material actually in the prosecutor's file. Without that kind of prosecutorial misconduct, *Agurs* holds that "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense" *(supra,* at 109-110).

To be sure, New York has recently rejected a single test of materiality in all *Brady* matters, as was adopted by the United States Supreme Court in *United States v Bagley* (473 US 667), and requires a less severe showing of materiality under certain circumstances *(see, People v Vilardi,* 76 NY2d 67). Under *United States v Bagley (supra),* a single test of materiality is imposed in all instances, under which a prosecutor's failure to disclose exculpatory material denies due process only if there is a *"reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" *(supra,* at 682 [emphasis supplied]). In *People v Vilardi (supra),* the majority of the Court of Appeals held that, as a matter of State constitutional due process, where the undisclosed exculpatory material was the subject of a specific discovery request by the defense, reversal is required merely upon "a showing of a *'reasonable possibility'* that the failure to disclose the exculpatory report

contributed to the verdict" *(supra,* at 77 [emphasis supplied]). This departure from the "reasonable probability" standard of materiality was justified on the basis that the case involved prosecutorial misconduct in failing to disclose specifically requested material, and "suppression, or even negligent failure to disclose, is more serious in the face of a specific request in its potential to undermine the fairness of the trial, and ought to be given more weight" *(supra,* at 77).

In our view, the reasonable *probability* standard of materiality should apply here. First and foremost, defendant has failed to show any act or omission by the prosecution, even negligent, which contributed to the informant's disappearance. Moreover, relaxation of the standard of materiality so as only to require the defense to establish a *possibility* that the informant's testimony would have affected the outcome represents a departure from the true meaning of *People v Jenkins (supra)* and from the developing body of Federal case law in the area of constitutionally guaranteed access to evidence most akin to the issues in the instant case *(see, California v Trombetta,* 467 US 479, 488-489; *United States v Valenzuela-Bernal,* 458 US 858, 873-874; *see also, Pennsylvania v Ritchie,* 480 US 39, 58).

It follows from the foregoing that the mere submission of the informant's affidavit, or his statement to the police that they were "not going to like [his] testimony", does not require reversal. This would be true in any event, but is particularly so here, where the statement to the police was highly ambiguous and the affidavit is cryptic, devoid of any detail concerning the pertinent events and contains no disclosure of the whereabouts of the informant. Moreover, defendant's moving papers did not explain how contact was made with the informant and did not offer to produce him. The foregoing circumstances surely do not establish, as a matter of law, a reasonable probability that the outcome of the trial would have been different had the informant testified.

■ While the submission of the informant's affidavit favorable to the defense does not alone require reversal, it did trigger a duty on the part of County Court to weigh all the relevant circumstances, including the informant's credibility, and entertain additional submissions, if any, to determine in the light of the entire trial record whether defendant established the required materiality of the informant's testimony *(see, United States v Agurs,* 427 US 97, 112-114, *supra).* This might have also entailed holding a hearing, particularly if the

defense produced the informant as a witness *(see, People v Miller,* 124 AD2d 830, 831-832, *lv denied* 69 NY2d 830, *cert denied* 481 US 1071).

Since County Court's decision rejecting defendant's motion to set aside the verdict fails to reflect due consideration of all of the various relevant facts and circumstances, we should withhold decision on the appeals from both judgments and remit for further proceedings not inconsistent with the foregoing.

YESAWICH, JR., J. (dissenting). We respectfully dissent.

The majority's analysis equates a defendant's right to the production of an essential witness with his right to discover exculpatory material, a protection accorded by the Due Process Clause of the 14th Amendment. Considered in this context, resort to the reasonable probability standard, which finds constitutional error when the prosecutor fails to release exculpatory evidence only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result [reached by the jury] would have been different" *(United States v Bagley,* 473 US 667, 682), appears appropriate. But we perceive defendant's right to the production of a favorable witness to be a compulsory process concern governed by the 6th Amendment. And while it is not entirely clear what a defendant must show to demonstrate that his constitutional right to compulsory process has been violated, it is clear that what needs to be shown is considerably less than that required to establish a due process violation. We find no foundation in the case law to justify invoking the reasonable probability standard, used to determine whether a defendant's right to disclosure has been breached, to measure whether his 6th Amendment right to have a witness produced has been violated.

The 6th Amendment Compulsory Process Clause guarantees at a minimum "that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt" *(Pennsylvania v Ritchie,* 480 US 39, 56). Compulsory process has been characterized as a fundamental right *(see, People v Chipp,* 75 NY2d 327, 336-337). Admittedly, the exact configuration of the Compulsory Process Clause has yet to be fully articulated *(Pennsylvania v Ritchie, supra,* at 55); and whether and how its guarantees differ from those of the 14th Amend-

ment have yet to be decided by the United States Supreme Court *(supra,* at 56). A useful analogue, however, is the Supreme Court's analysis of those cases in which the government has deported an eyewitness. In this situation, a defendant need only demonstrate "some plausible explanation of the assistance he would have received from the testimony of the deported witnesses" to establish a Compulsory Process Clause violation *(United States v Valenzuela-Bernal,* 458 US 858, 871). This is a far cry from having to establish a reasonable probability that the absent witness's testimony would have changed the outcome of the defendant's trial.

While our Court of Appeals also has not yet defined the parameters of compulsory process, it specifically observed in *People v Jenkins* (41 NY2d 307) that the standards for resolving due process and compulsory process issues are not identical, noting: "[W]e are not here involved with an obligation to produce any claimed or demonstrated exculpatory *nonwitness* evidence as in *Brady v Maryland* [373 US 83] or *United States v Agurs* [427 US 97]. Requirements * * * to produce exculpatory nontestimonial evidence or to produce a witness under prosecutorial control touch tangentially upon the question presented in this case. [Nor are we] here directly concerned with the rules governing *[Brady]* situations for, although they too are concerned with the relevance and materiality of the evidence sought with respect to the question of guilt, [they are] *subject to somewhat differing standards" (People v Jenkins, supra,* at 311 [emphasis supplied]). Significantly, the court concluded that even where the prosecution diligently albeit unsuccessfully attempts to locate a missing witness informant, a defendant is nevertheless entitled to have the charges dismissed or a new trial ordered if he can affirmatively "demonstrate that the proposed testimony of the informant would *tend to be exculpatory or would create a reasonable doubt* as to the reliability of the prosecution's case" *(supra,* at 310-311 [emphasis supplied]; *see, People v Wicks,* 76 NY2d 128, 133 [denying a defendant's 6th Amendment right to the assistance of counsel at a preliminary hearing is harmless error only if there is no reasonable *possibility* that the error might have contributed to the defendant's conviction]).

That something less than "reasonable probability" is the appropriate standard of review is further borne out by the *Jenkins* majority's concession that "the dissenter would be persuasive if, but only if, there was the *slightest suggestion* in

the record that [the missing informant's] testimony would to the *slightest degree* establish any of the facts influencing the issue of guilt or innocence of the defendant" *(People v Jenkins, supra,* at 313 [emphasis supplied]).

Frequently defendants are unable to affirmatively show how an informant's testimony would be exculpatory; here, however, defendant had no such difficulty. Discovering, shortly before trial commenced, that Charles Harvey would not testify, defendant immediately requested the presence of this missing witness. Harvey, an active and central participant in the alleged transaction, "was the only witness in a position to amplify or contradict the testimony of [the] government witness" *(Roviaro v United States,* 353 US 53, 64). At trial it was revealed that although Harvey's whereabouts were unknown, he had contacted the State Police by telephone and told them, "You are not going to like my testimony." After the trial was completed, defendant secured a fairly detailed affidavit from Harvey in which he avers that on December 4, 1986, at about 9 o'clock at the Viking Lanes parking lot in Dryden, New York: "[Defendant] did not sell me (or anyone else), or give me (or anyone else), any marijuana. Mr. Roney [the undercover police officer] gave me marijuana to take to [defendant's] car. [Defendant] looked at what was in the bag, I told [defendant] that Mr. Roney wanted to buy a lot more marijuana like this. [Defendant] told me that he did not do that sort of thing and could not get any marijuana for Mr. Roney. While I was in [defendant's] car * * * Mr. Roney was standing over by his car, which was parked a couple of cars away. * * * After I left [defendant's] vehicle I gave Mr. Roney back the marijuana and he put the bag in his trunk. * * * I told [the State Police] that [defendant] did not have any marijuana * * *. I told [the police] that [they] would not like what I had to say if I testified, but no attempt was made to contact me to testify at [defendant's] trial." Irrespective of Harvey's credibility, it is obvious that had he testified, his testimony would have tended to support defendant's contention that the grounds for his arrest were falsely concocted and could have had a vital impact on the ultimate issue of whether he is innocent or guilty. At all events, given the language of *Jenkins (supra)* it can fairly be said that the People's failure to secure this witness deprived defendant of a fair trial *(see, People v Brown,* 84 AD2d 910; *see also, People v Jenkins, supra; People v Canales,* 75 AD2d 875; *cf., People v Watson,* 120 AD2d 866, 867; *People v McKinney,* 82 AD2d 895). The favorable missing

witness charge defendant was accorded is no substitute for his right to compulsory process *(cf., People v White,* 57 AD2d 967, 968). Accordingly, the conviction should be reversed and the matter remitted for a new trial and the judgment rendered June 7, 1989, should be stayed pending resolution of the new trial.

MAHONEY, P. J., and MERCURE, J., concur with LEVINE, J.; MIKOLL and YESAWICH, JR., JJ., dissent and vote to reverse in an opinion by YESAWICH, JR., J.

Decision withheld, and matters remitted to the County Court of Tompkins County for further proceedings not inconsistent with this court's decision.