OPINION OF THE COURT
Hancock, Jr., J.
In People v Velasco (77 NY2d 469), we held that defendants do not have the right to be personally present during informal questioning of prospective jurors that relates only to grounds for juror disqualification by the court, such as physical impairment, family obligations and work commitments. The issue presented here is whether a defendant has a right to hear and be present during conference questioning concerning issues touching upon the merits, such as in this case, the jurors’ knowledge of and reaction to pretrial publicity concerning the specific crime on trial and their attitude toward the prosecution’s key witness, a widely known television newscaster. For the reasons that follow, we hold that questioning the prospective jurors on such matters without the presence of defendants was error. There should, therefore, be a reversal and a new trial.
I.
On May 11, 1983, defendants McMahon and Sloan, with the aid of two others, allegedly robbed the Racing Club restaurant on the Upper East Side of Manhattan. John Roland, a local television newscaster, attempted to disarm Sloan during the robbery. A struggle ensued during which shots were fired from Sloan’s handgun; Sloan and Roland grappled until McMahon subdued Roland by hitting him several times on the head with a pistol. While the robbery was underway, a waiter escaped from the restaurant and fled to a nearby police station. Defendants were apprehended one-half block from the scene after the waiter returned with the police and pointed out defendants as they fled the restaurant and entered a getaway car. Roland and two other witnesses later identified defendants in showup identifications held at the station house.
At the subsequent trial, prior to commencement of the formal voir dire by counsel, the Judge conducted a side-bar voir dire of prospective jurors regarding the impact of pretrial publicity and the widely reported involvement of Roland in the crime. After swearing in 90 prospective jurors, the Judge questioned them individually as to their exposure to pretrial publicity, their familiarity with Roland and the weight that *391 they would give his testimony, and their knowledge of police and arrest procedures and of the crime scene. Jurors were asked such questions as whether they could weigh a news reporter’s testimony fairly; whether they believed that a newscaster has a better ability to observe and recall events than other witnesses; and whether their own knowledge of Roland as a newscaster or their exposure to pretrial publicity would affect their ability to be impartial. Many prospective jurors stated that they knew Roland as a television personality and that they had heard that he had been "pistol-whipped” during the robbery, had been hailed as a "hero”, and had received an award for crime prevention because of his actions. The questioning, conducted at the bench and out of hearing of defendants, continued until 18 venire members were chosen for formal voir dire.
Defendants were subsequently convicted after a jury verdict of robbery and weapons possession charges. In separate unanimous decisions, the Appellate Division affirmed the convictions (People v McMahon, 167 AD2d 137; People v Sloan, 169 AD2d 513). We now reverse.
II.
New York has long held that defendants have a fundamental right to be present with counsel at all material stages of a trial (see, CPL 260.20; People v Turaine, 78 NY2d 871; People v Mehmedi, 69 NY2d 759; People v Ciaccio, 47 NY2d 431; People v Mullen, 44 NY2d 1; Maurer v People, 43 NY 1; NY Const, art I, § 6; Preiser, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 260.20, 1992 Supp Pamph, at 238). In People v Velasco (77 NY2d 469, supra), we summarized the law, stating:
"In People v Mullen (44 NY2d 1), we delineated the scope of a defendant’s statutory and constitutional rights to be present during court proceedings. We stated that under CPL 260.20, a defendant’s right to be present during the trial of an indictment included presence during the impaneling of the jury, the introduction of evidence, the summations of counsel, and the court’s charge to the jury (see, People v Mullen, 44 NY2d, at 4; Maurer v People, 43 NY 1, 3). We further noted that '[a]part from our statutory provision, due process requires the presence of a defendant at his *392 trial "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.” (Snyder v Massachusetts, 291 US 97, 108.) His presence is required only where his absence would have a substantial effect on his ability to defend. (Snyder v Massachusetts, 291 US, at pp 105-106, supra * * *.)’ (44 NY2d, at 4-5.)” ad., at 472.)
In Velasco, we concluded that a defendant’s presence was not required when the court posed questions relating only to the qualifications of jurors in the general sense — questions concerning such matters as physical impairments, family obligations, and work commitments. We pointed out that the decisions of whether to excuse jurors on the grounds explored by such pre-voir dire screening were matters solely for the court, in which neither the defendant nor his counsel had a role (id., at 473). Thus, we held that a defendant’s presence or absence at such questioning could have had no effect on the ultimate fairness of the trial proceeding (id., at 473). We concluded that "[ujnder the circumstances, defendant’s presence at the bench conference would have been ’useless, or the benefit but a shadow.’ (Snyder v Massachusetts, 291 US, at 106-107.)” (Id., at 473.) Defendant, therefore, had no right to be present at such side-bar voir dire questioning.
Unlike Velasco, however, defendants’ presence here could have had a substantial effect on their ability to defend against the charges. The questioning went well beyond the matters pertaining to the jurors’ general qualifications covered in Velasco and delved into attitudes and feelings concerning some of the events and witnesses involved in the very case to be heard. The effect on the jurors of the pretrial publicity, their attitudes toward and possible predisposition to believe Roland, a key prosecution witness, and their ability to weigh the evidence objectively were subjects properly addressed in a formal voir dire.
Defendants’ presence at the questioning on such matters and the resultant opportunity for them to assess the jurors’ facial expressions, demeanor and other subliminal responses as well as the manner and tone of their verbal replies so as to detect any indication of bias or hostility, could have been critical in making proper determinations in the important and sensitive matters relating to challenges for cause and peremptories (see, Snyder v Massachusetts, supra, at 105; People v *393 Ciaccio, 47 NY2d 431, 436, supra; People v Ganett, 68 AD2d 81, 87, affd 51 NY2d 991). We cannot conclude that defendants’ presence at the side-bar questioning would have been of no benefit or that their absence during such questioning would not have had a substantial effect on their ability to defend (People v Velasco, supra, at 473). Their exclusion from the questioning was error.
We have reviewed defendants’ other contentions and find them to be without merit.
Accordingly, in each case the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Kaye, Titone and Bellacosa concur.
In each case: Order reversed, etc.