■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROGELIOS MULINAR, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Juviler, J.), rendered April 6, 1990, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was convicted of murder in the second degree for the shooting death of a patron of a social club in Brooklyn. On appeal, he contends that he is entitled to a new trial because neither he nor his attorney were present in the courtroom when seven unsworn prospective jurors were discharged.

The trial minutes indicate that the first panel of prospective jurors was brought into the courtroom on March 1, 1990, and five jurors were selected and sworn by the end of the day. The next day, a Friday, the court was informed by the Corrections Department that the defendant refused to attend court for religious reasons. The court adjourned the proceedings until the following Monday and informed the prosecutor and defense counsel in court that the five sworn jurors, who were expected to arrive at noon, would be contacted. The court further stated that the panel of prospective jurors that was waiting downstairs would be brought into the courtroom "with no one else here but me" and told to come back Monday morning. Neither attorney objected to this procedure, although given the opportunity to do so.

On the following Monday, the defendant was present with counsel. The court informed the parties that, on Friday, seven of the prospective jurors from the panel asked to speak to the court upon learning of the adjournment. The seven prospective jurors, none of whom had been sworn, were then discharged. The court named the prospective jurors and gave the following reasons for discharging them: the first prospective juror could not be fair as his nephew had been murdered; the second prospective juror could not keep an open mind about the case; the third prospective juror was a sales manager and would suffer hardship if the case went into a third week; the fourth prospective juror had an 88-year-old mother whom he could not leave alone at night if the jury were sequestered, and he had no one else to take care of her; the fifth prospec-

tive juror was in training in a new job and would face financial hardship if he had to stay a third week; the sixth prospective juror could not hear, was very emotional because he was a Holocaust survivor, and stated that it would be hard for him to sit on a case involving a murder; and the seventh prospective juror was a Holocaust survivor with very high blood pressure and was afraid. The defense counsel then simply stated "Thank you, your Honor", and jury selection continued.

We note that the defendant's contention on appeal that the court erred in discharging the prospective jurors in his absence is subject to appellate review, despite his failure to object during the proceedings *(see, People v Mehmedi,* 69 NY2d 759; *see also, People v Dokes,* 79 NY2d 656). We conclude that the court's action did not infringe upon the defendant's right to be present at his trial and, accordingly, affirm his conviction.

A defendant has a statutory right to be personally present at his trial, and this right extends to the impaneling of the jury *(People v Mullen,* 44 NY2d 1, 4; CPL 260.20). Apart from this statutory right, "due process requires that a defendant be present 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge' " *(People v Dokes, supra,* at 659, quoting *Snyder v Massachusetts,* 291 US 97, 105-106). "In determining whether a defendant has a right to be present during a particular proceeding, a key factor is whether the proceeding involved factual matters about which defendant might have peculiar knowledge that would be useful in advancing the defendant's or countering the People's position" *(People v Dokes, supra,* at 660).

The right to be present during the impaneling of the jury does not necessarily extend to every phase of the jury selection process. In *People v Velasco* (77 NY2d 469), the Court of Appeals held that a defendant does not have either a statutory or a constitutional right to be personally present when the court determines, prior to formal voir dire, that a prospective juror is disqualified for general reasons such as physical impairments, family obligations or work commitments. Nor does a defendant's counsel have a role in such informal, pre-voir dire proceedings *(see, People v Sloan,* 79 NY2d 386, 392). The defendant's presence at the pre-voir dire phase may have a substantial effect on his ability to defend himself, however, if the prospective jurors are asked about their attitudes towards some of the witnesses and events in the particular case

to be tried. For example, in *Sloan,* the prospective jurors were questioned about the effect of pretrial publicity, their attitudes towards a key prosecution witness, and their ability to weigh the evidence in the case objectively. The court determined that such questions were more properly addressed in a formal voir dire with the defendant present to observe the prospective jurors' responses.

Here the prospective jurors were discharged during an informal pre-voir dire phase of the proceedings. Although formal voir dire had been conducted with respect to the first panel on March 1, 1990, the formal voir dire had not commenced with respect to the seven prospective jurors who were discharged on Friday. Consequently, if the prospective jurors were discharged for reasons which related to their general qualifications to serve as jurors, under the decision in *People v Velasco (supra),* the defendant did not have a statutory or constitutional right to be present.

Five of the seven prospective jurors were discharged due to physical impairments, family obligations, or work commitments. The other two prospective jurors were discharged because they said they could not be fair, which also relates to their general qualifications to serve on a jury. We note that the court is required to excuse for cause those prospective jurors who indicate they cannot be impartial *(see, People v Ganett,* 68 AD2d 81, *affd* 51 NY2d 991; CPL 270.15, 270.20). It is clear, on this record, that the defendant's absence when the seven prospective jurors were discharged did not have a substantial effect on his ability to defend against the charges and that his presence "would have been 'useless, or the benefit but a shadow' " *(People v Velasco, supra,* at 473, quoting *Snyder v Massachusetts, supra,* at 106-107).

We find that the defendant's sentence was not unduly harsh or excessive. Lawrence, J. P., Eiber, O'Brien and Copertino, JJ., concur.