*141 OPINION OF THE COURT
Gerald Sheindlin, J.
In the midst of this multidefendant trial, this court is now required to reevaluate the trial’s jury selection procedures in light of the recent Court of Appeals decision in People v Antommarchi (80 NY2d 247).
FINDINGS OF FACT
On September 14, 1992, voir dire of the prospective jurors commenced in this 10-defendant case wherein various defendants are charged with riot in the first degree, attempted murder in the second degree, assault in the second degree, and other crimes.
During the voir dire proceedings, the court posed the question whether any prospective juror or their families or their close friends had ever been arrested or convicted of any crime. The court further advised the prospective jurors that if they answered in the affirmative, their information would be revealed privately at the Bench. The purpose was to insure that there would be no reluctance by any prospective juror in answering this potentially embarrassing question.
Many prospective jurors indicated that they, or family members or friends had indeed been arrested or convicted of crimes. This court accordingly directed that the 10 lawyers, the court and the prospective juror retire to the robing room to continue the inquiry on the record. It is noted, that prior to the commencement of the questioning of the individual juror, each counsel indicated that their respective client waived their right to be present during this proceeding. The defendants, however, were not individually questioned by the court concerning this waiver nor were the lawyers requested to place on the record their conversations with their client or the basis of their client’s waiver to be present.
The questioning of each individual juror thus proceeded outside the presence of the defendants. The inquiries of each juror involved, without question, the ability of the juror to weigh the evidence objectively, their potential bias, hostility and general predisposition in evaluating the evidence.
A jury was eventually selected on September 21, 1992 and the trial commenced.
On October 27, 1992, the Court of Appeals decided People v Antommarchi (supra) wherein the Court declared, in no uncer *142 tain terms, that a defendant had a "fundamental right” to be present during the voir dire process when the ability and qualifications of a juror to be fair and impartial are probed.
This court became aware of the Antommarchi case (supra) on October 28,1992. Because the instant trial was into its fifth week and was expected to continue for an additional six months, this court concluded that a mistrial would be required. There was no sense in wasting the resources of this court where it was crystal clear that a violation of Antommarchi had occurred. A reversal of any conviction would be inevitable.
Accordingly, this court conferenced the case with counsel wherein each counsel was directed to discuss the principles of Antommarchi (supra) with each defendant. If the defendants wished a mistrial, that motion would be granted. However, if the defendants agreed to knowingly, intelligently and voluntarily waive, on the record, their right to be present during the voir dire proceedings, nunc pro tunc, then the trial would continue. The court was thereafter advised that each defendant and their attorneys elected to continue the trial. Accordingly, the court allocuted each defendant individually to insure that each defendant knowingly, intelligently and voluntarily waived their fundamental right to be present during a material part of the trial, nunc pro tunc.
The court inquired of each defendant, in sum and substance, as follows:
"1) Do you know that you had and do have a right to be present when a prospective juror is questioned concerning the juror’s qualifications?
"2) You had and do have a right to hear the answers of the prospective juror.
"3) You had and do have a right to evaluate the answers of the prospective juror to determine for yourself the prospective juror’s bias, hostility or predisposition to believe or discredit the testimony of potential witnesses and to evaluate the juror’s answers so that you may see the juror’s facial expressions, demeanor and other subliminal responses.
"4) You had and do have a right to determine for yourself and with your attorney, whether the juror can be fair and impartial in this trial.
"5) Do you understand your rights?
"6) Do you wish to ask me any questions about your rights?
*143 ”7) Do you waive your right to be present during the questioning of any prospective juror?
"8) Did anyone force you to waive your right to be present?
"9) Did anyone threaten or coerce you to waive your right?
"10) Are your waiving your rights voluntarily?
"11) Are you waiving your rights freely?
"12) If I asked you these same questions at the time of jury selection, would your answers be the same as it is now?”
Each of the defendants indicated that they elected to waive their right to be present, nunc pro tunc, and urged that the trial continue.
CONCLUSIONS OF LAW
This court was aware of the teachings of People v Sloan (79 NY2d 386 [1992]). However, the issue presented appeared, on the surface, to be fact sensitive. In Sloan, one of the chief witnesses for the prosecution was John Roland, a famous and renowned television news reporter. Hence, the questioning of the prospective jurors appeared to focus on the issue of the fame and credibility of this witness. Indeed, the Court of Appeals noted, in reversing, that there was specific questioning of the prospective jurors concerning: (1) "whether they could weigh a news reporter’s testimony fairly”; (2) "whether they believed that a newscaster has a better ability to observe and recall events than other witnesses”; (3) "whether their own knowledge of Roland as a newscaster * * * would affect their ability to be impartial.” (Supra, at 391.)
Many jurors stated they knew of Roland as a newscaster and as a "hero”. (Supra, at 391.)
In Sloan (supra), counsel did not object to the side bar inquiry of jurors nor was there any specific consent by counsel to the defendants’ absence during the inquiry. Further, the Court seemed to emphasize the unique nature of the inquiry, noting that "defendants’ presence here could have had a substantial effect on their ability to defend against the charges. The questioning * * * delved into attitudes and feelings concerning some of the events and witnesses involved in the very case to be heard * * * [including their] possible predisposition to believe Roland, a key prosecution witness” (supra, at 392 [emphasis added]).
Accordingly, in the present case, this court concluded that there were circumstances wherein a defendant, through his *144 attorney, may waive his presence and not violate the principles outlined in Sloan (supra). Unfortunately, this conclusion, which was adopted by many Trial Judges, has now been condemned by Antommarchi and has caused significant distress if applied retroactively.[1] The rule is now clear that a defendant has a "fundamental right”[2] to be present during voir dire, except when the court is addressing a juror’s general qualifications such as "physical impairments, family obligations and work commitments.” (People v Antommarchi, supra, 80 NY2d, at 250; see also, People v Velasco, 77 NY2d 469.)
Although the rule in Antommarchi (supra) was indeed violated in this case, the defendants waived their rights knowingly, intelligently and voluntarily, nunc pro tunc.[3]
Hence, the trial will continue.

. See, New York Post, Nov. 13, 1992, at 1; New York Times, Nov. 15, 1992; Spencer, Defendant’s Rights at Trial at Issue, NYLJ, Nov. 16, 1992, at 1, col 3.

. A "fundamental right” of a defendant can only be waived by the defendant personally and only upon a showing that the "defendant knowingly, voluntarily and intelligently relinquished this known right.” (People v Epps, 37 NY2d 343, 350.)

. See, People v Windley, 134 AD2d 386 (defendant personally may waive his appearance, nunc pro tunc); People v Carr, 168 AD2d 213 (defendant must personally exercise a knowing, voluntary and intelligent waiver of his right to be present at the appropriate time or nunc pro tunc).