■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VERNON RICKS, Appellant. [631 NYS2d 56] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Joy, J.), rendered August 11, 1992, convicting him of murder in the second degree (two counts), attempted robbery in the first degree (two counts), attempted robbery in the second degree, and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

An examination of the record in the case before us reveals that the voir dire was commenced on April 20, 1992, approximately two weeks after the April 7, 1992, decision by the Court of Appeals in People v Sloan (79 NY2d 386).

During the voir dire the court asked if any of the prospective jurors knew about this case due to the publicity it had received. A number of prospective jurors responded affirmatively. The

court called each prospective juror up to a sidebar, individually, and conducted a discussion off the record. Each prospective juror was excused without objection by the defense counsel.

The defendant now argues that his absence from the sidebar conferences mandates reversal under the dictates of *People v Sloan (supra)*. The People contend that it cannot be determined from the record whether the defendant, or even the attorneys, were present at the sidebar conferences, or whether those conferences were indeed about pretrial publicity. We disagree. The record adequately demonstrates that the sidebar conferences were about pretrial publicity. Each conference was conducted immediately after the prospective juror indicated that he or she had previously heard about the case. Each juror was then excused immediately following the conference.

It is also clear from the record that the defendant was not present at the sidebar conferences. The court specifically informed the jurors that "in the event that any of you feel that you prefer to answer a question only in the presence of myself and the attorneys, merely indicate that you wish to approach, and you will be brought before the bench". Thus, this case is distinguishable from *People v Neal* (205 AD2d 711), relied upon by the People, in which the record was insufficient to permit factual review. Because we conclude that the defendant was not present during the sidebar conversations, and there was no proper waiver of his presence at the sidebar, the defendant's conviction must be reversed and a new trial ordered *(see, People v Sloan, supra)*.

For purposes of a new trial, we find that the court properly instructed the jury that the accomplice status of the witness, Gibbs, was a question of fact *(see, People v Vataj, 69 NY2d 985)*. Considering that there was a version of the events by which a jury could have reasonably concluded that the defendant did not participate in the commission of the crime itself, we disagree with the conclusion of our concurring colleague that the witness's status as an accomplice was a question of law. We also find that the probative value of the evidence of uncharged crimes committed by the defendant and the codefendant prior to the incident in question outweighed its prejudicial effect and was properly elicited during the examination of Gibbs *(see, People v Alvino, 71 NY2d 233)*. This evidence was probative of the defendant's and the codefendant's shared intent *(see, People v Warren, 162 AD2d 361)*.

Because we remit this matter for a new trial, we need not reach the defendant's remaining contentions. Bracken, J. P., Rosenblatt and Ritter, JJ., concur.

Goldstein, J., concurs in the result, with the following memorandum: I agree with my colleagues on all points except for their conclusion that the accomplice status of the witness Gibbs is a question of fact. At the trial, Gibbs admitted that, on the day of the crime, he, the defendant, and the codefendant Mack attempted "[a]bout two" robberies, but failed. Then Gibbs returned to the defendant's and Mack's apartment, where Mack retrieved a shotgun and loaded it. Gibbs, the defendant, and Mack went outside and agreed to rob the victim.

Another prosecution witness testified that he saw the victim, whom he knew from the neighborhood, and noted that the victim was being followed by Gibbs, Mack, and the defendant. The defendant was carrying a gun. Gibbs stopped when the witness asked him if he saw the gun, while the defendant and Mack continued to follow the victim. Both Gibbs and the witness then heard a shotgun blast and a scream. Gibbs and the defendant fled the scene together. The victim had been shot, and died of his injuries.

In exchange for testifying, Gibbs entered into a cooperation agreement with the District Attorney, wherein the District Attorney agreed that Gibbs could not "be convicted of anything" based upon his testimony.

It is clear that Gibbs participated in the planning and execution of the attempted robbery resulting in the victim's untimely death, and fled the scene with the defendant *(see, People v Jones,* 73 NY2d 902; *People v Durio,* 175 AD2d 842, 844; *People v Strawder,* 124 AD2d 758, 759). The fact that Gibbs hesitated to speak to a bystander witness did not indicate that he abandoned the criminal enterprise *(see, People v Basch,* 36 NY2d 154, 157; *cf., People v Dorler,* 53 NY2d 831).

To be considered an accomplice as a matter of law, the proof against the alleged accomplice "need not show the participation of the witness beyond a reasonable doubt" *(People v Berger,* 52 NY2d 214, 219). The evidence need only establish that the alleged accomplice "may reasonably be considered to have participated in * * * [t]he offense charged" or "[a]n offense based upon the same or some of the same facts or conduct" (CPL 60.22 [2]). Since Gibbs clearly participated in the defendant's criminal enterprise, and the selection of the victim, he is an accomplice as a matter of law, and, upon retrial, the jury should be so instructed.