OPINION OF THE COURT
David Friedman, J.
Jury selection on this case commenced on a Friday morning with 52 jurors being brought to the courtroom and being sworn *415 to answer truthfully questions asked of them. All of these jurors were questioned in general terms about matters such as whether they know any parties or witnesses, could accord defendant the presumption of innocence, were available for service, and could follow instructions on the law. After this preliminary general questioning numerous prospective jurors were excused for a variety of reasons. Ultimately 20 jurors were seated in the jury box for more detailed questioning by the court and counsel. As the lunch hour approached the prosecutor and defense counsel exercised peremptory challenges to 14 of the jurors, one was excused for cause and five were selected for the jury and sworn. Remaining in the back of the courtroom were seven jurors who had not been placed in the box for individual questioning.
In a bench conference with counsels on Thursday and again on Friday the court advised them that jury selection in this case would not continue during the Friday afternoon session. This was because the court had previously scheduled the afternoon of Friday for a suppression hearing on a different case and in fact two police officers were present to testify at such hearing. The court therefore proposed to send the seven jurors, who had begun jury service earlier in the week, back to Central Jury and continue jury selection with fresh jurors on Monday morning. The court made this proposal because of the approaching weekend and the fact that the seven jurors would be discharged from further jury service if sent back to Central Jury as this was to be their last day of jury duty if they were not actually selected to sit on a jury.
The People had no objection and initially neither did defense counsel. Defense counsel, however, then changed her position and objected to having the seven jurors returned to Central Jury. Notwithstanding her objection I returned those jurors to Central Jury. This opinion explains my ruling.
Examination of the statutory framework governing the release of a juror from jury service must begin with Judiciary Law § 517. Section 517 concerns itself with applications by prospective jurors summoned to attend jury service for either ex-cusal or postponement of their service. Where a prospective juror seeks excusal from jury service subdivision (c) of section 517 requires the commissioner of jurors or the court to "consider whether the [prospective juror] has a mental or physical condition that causes him or her to be incapable of performing jury service or there is any other fact [which] indicates that attendance for jury service * * * would cause undue hardship or extreme inconvenience”.
*416 While the requirements for excusal set forth in subdivision (c) are certainly of interest, they are not controlling here. The instant situation does not involve an application by a juror seeking to avoid service but rather the court acting sua sponte. Furthermore, the case at bar does not deal with prospective jurors summoned to attend but rather with prospective jurors already on a panel and waiting to be questioned.
The procedures to be followed with such jurors are contained in CPL 270.15. Pursuant to subdivision (1) of that statute such jurors before being questioned must be sworn to answer truthfully questions asked of them relative to their qualifications to serve as jurors in the action. Counsel for both parties must then be given an opportunity to question the jurors. In this case the seven jurors were sworn along with the rest of the panel to answer questions truthfully. However, they were never questioned by counsel.
Where the jurors are questioned CPL 270.15 (2) goes on to provide that after questioning the parties may exercise challenges for cause and peremptory challenges. Those who are not excluded must be immediately sworn as trial jurors with an oath to try the action in a just and impartial manner, to the best of their judgment, and to render a verdict according to the law and the evidence.
In regard to jurors who have been selected and sworn to this latter oath the trial court has only limited authority to discharge. CPL 270.15 (3) indicates that the only basis for discharging such a juror before 12 jurors are sworn is if the juror becomes unable to serve by reason of illness or other incapacity (People v Wilson, 106 AD2d 146, 150).
The situation at bar, however, deals not with selected and sworn jurors, but rather with jurors sworn only to answer questions truthfully about their qualifications pursuant to subdivision (1) of CPL 270.15. The statutory framework is silent as to dismissal of such jurors except insofar as CPL 270.15 (2) provides for the dismissal of prospective jurors upon the exercise of challenges. Stated otherwise the statute makes no provision for dealing with these jurors and their jury service other than the exercise of a challenge. Nevertheless, I conclude that the jurors may properly be dismissed without the exercise of a challenge.
CPL 270.15 (1) (a), (c) provides in pertinent part that when a jury panel is brought to the courtroom,
"JTJhe court shall direct that the names of not less than twelve members of the panel be drawn and called * * * Such *417 persons shall take their places in the jury box and shall be immediately sworn to answer truthfully questions asked them relative to their qualifications to serve as jurors in the action * * *
"The court shall permit both parties * * * to examine the prospective jurors, individually or collectively, regarding their qualifications to serve as jurors”.
In the case at bar, and as is the common practice, the entire panel of 52 prospective jurors was sworn upon entering the courtroom. No jurors were resworn to answer questions truthfully when placed in the jury box for voir dire which, absent an objection, is standard practice (Bench Book for Trial Judges — New York, part L, Criminal Law, § 73 [A] [1], at L-37 [1995]).
While CPL 270.15 (1) refers to the swearing of jurors, it speaks of such requirement in the context of jurors who have been seated in the jury box. Hence, the statute provides that the names of not less than 12 persons shall be selected from the panel, placed in the box, and then sworn to answer questions truthfully. By way of contrast what occurred with the subject seven jurors was that while they were sworn, they were never placed in the box. In sum, the seven jurors were never part of voir dire but only of something known as pre-voir dire.
The concept of a pre-voir dire stage of the proceeding, while not statutorily enunciated, is clearly a recognized part of the jury selection process (see, People v Sloan, 79 NY2d 386; People v Velasco, 77 NY2d 469; People v Thomas, 232 AD2d 303). A determination that a prospective juror should be discharged during such pre-voir dire screening because of physical impairments, family obligations, or work commitments is a matter within the discretion of the court (People v Sloan, supra; People v Velasco, supra).
This analysis is supported by People v Sloan (supra). In Sloan, prior to the commencement of formal voir dire, the trial court swore a panel of 90 prospective jurors and questioned them outside the presence of defendant. In discussing defendant’s absence the Court stated (at 392): "In Velasco, we concluded that a defendant’s presence was not required when the court posed questions relating only to the qualifications of jurors in the general sense — questions concerning such matters as physical impairments, family obligations, and work commitments. We pointed out that the decisions of whether to excuse jurors on the grounds explored by such pre-voir dire screening were *418 matters solely for the court, in which neither the defendant nor his counsel had a role” (emphasis added).
Hence, Sloan (supra) would appear to approve of the discharge by the court of a juror because of matters such as work-related commitments revealed at the pre-voir dire phase of the proceedings — even though the entire panel had been sworn. In my view it follows that juror convenience is included as a factor for which there is judicial discretion to dismiss prospective jurors during this pre-voir dire phase of the trial.
Furthermore, the concept of sua sponte dismissal of a juror during jury selection, albeit under different circumstances, was unequivocally recognized in People v Wilson (211 AD2d 136, affd 88 NY2d 363). The Appellate Division pointed out (at 142): "We disagree with defendant’s contention that the Judge was unable, without a challenge, to excuse the prospective juror. As the Court of Appeals has pointed out, '[t]he role of a Trial Judge in a criminal case is not merely that of an observer or even that of a referee enforcing the rules of a game’ ” (citations omitted).
People v Mulinar (185 AD2d 996) is also instructive. There defendant refused to attend court on Friday morning because of religious observance. A panel was waiting to enter the courtroom. The Judge spoke to the jurors without the presence of defendant, his attorney, or the prosecutor and advised the panel to return Monday morning. Seven of the jurors asked to speak to the Judge upon learning of the adjournment. After speaking with the Judge they were, for various reasons, excused from returning. In upholding the Judge’s discharge of the jurors the Court stated (at 998), "Here the prospective jurors were discharged during an informal pre-voir dire phase of the proceedings * * * [T]he formal voir dire had not commenced with respect to the seven prospective jurors who were discharged”.
In the case at bar the determination to dismiss the seven jurors in what was for them a pre-voir dire phase of the trial impinged on none of the defendant’s rights. The court was concerned with juror convenience and sought to diminish the burden upon citizens carrying out their civic responsibilities. Under the discretion vested in the court to supervise the jury selection process this constituted an adequate basis to discharge the jurors. In sum, while the court must be vigilant to *419 protect defendant’s rights, the court must also be vigilant to treat jurors fulfilling their jury obligations with common sense and courtesy. Accordingly, the court was authorized to sua sponte discharge the seven jurors.