OPINION OF THE COURT
 

 Rosenblatt, J.
 

 The appeal before us involves alleged juror misconduct. Defendant seeks reversal of his conviction because during voir dire a juror failed to reveal his friendship with a New York County Assistant District Attorney who was not involved in the prosecution of defendant’s case. We agree with the Appellate Division that the trial court, after conducting a hearing, properly concluded that there was no basis to order a new trial.
 

 I.
 

 In September 1998, an undercover officer approached defendant at a street corner in Manhattan and asked him for a “bag of blow” (i.e., cocaine). Defendant led the officer into a nearby building and told him to wait while defendant went elsewhere. A few minutes later, defendant returned and handed the officer a bag of cocaine in exchange for $20 of prerecorded money.
 

 
 *33
 
 As defendant and the officer walked away together, another undercover officer followed them, continuously transmitting defendant’s location and description to a field team nearby. The officer who bought the cocaine stopped briefly to examine the package and told defendant, “All right. This looks cool.” Defendant responded, “Next time I see you out here, I’ll give you my card with my beeper number.” Minutes later the field team moved in and arrested defendant. The officers found the prerecorded money in defendant’s pocket, and the officer who made the buy identified defendant as the seller. A jury subsequently found defendant guilty of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]).
 

 Soon after the verdict, one of the jurors, Steven Cohen, contacted Andrew Carey, a New York County Assistant District Attorney with whom he had previously been acquainted. Cohen told Carey that he had served as a juror on defendant’s trial and had intentionally concealed that he and Carey knew each other. Carey immediately reported the conversation to the prosecuting attorney, who in turn disclosed it to the court and defense counsel. In response to defendant’s motion to set aside the verdict pursuant to CPL 330.30, the court conducted a hearing at which Cohen and Carey testified. The court credited Cohen’s and Carey’s testimony that their relationship was “remote,” and that Cohen’s sole reason for wanting to remain on the jury was his desire to serve on a short trial. Satisfied that Cohen’s lack of disclosure worked no prejudice against defendant, the court denied the motion.
 

 The Appellate Division affirmed, agreeing with Supreme Court that “the juror’s concealment of information during voir dire did not cause any prejudice that would entitle defendant to a new trial” (291 AD2d 317, 317 [2002]). A Judge of this Court granted defendant permission to appeal and we now affirm.
 

 II.
 

 Defendant argues that he has been denied his right under the State Constitution to a fair and impartial jury chosen with his participation. Specifically, defendant contends that he was denied a voice in the selection of the jury because Cohen’s concealment deprived him of the opportunity to question Cohen more fully and possibly remove him from the jury.
 

 As defendant correctly points out, we have held that “[a] defendant has a constitutional right to a trial by a ‘particular jury chosen according to law, in whose selection [the defend
 
 *34
 
 ant] has had a voice’ ”
 
 (People v Buford,
 
 69 NY2d 290, 297-298 [1987], quoting
 
 People v Ivery,
 
 96 AD2d 712, 712 [1983];
 
 see also People v Rodriguez,
 
 71 NY2d 214, 218 [1988];
 
 People v Anderson,
 
 70 NY2d 729, 730 [1987]). To safeguard this right, the Legislature has enacted provisions affording criminal defendants the ability to “participate fully in the selection of the jury”
 
 (Rodriguez,
 
 71 NY2d at 218). These protections, which we have found to be adequate under the State Constitution
 
 (see id.
 
 at 218, 220), range from the right to a jury chosen according to law
 
 (see
 
 CPL 270.05) to the right to remove a juror who is “grossly unqualified” to serve
 
 (see
 
 CPL 270.35 [1];
 
 see generally Rodriguez,
 
 71 NY2d at 218).
 

 Defendant relies on these cases in support of his claim that the concealment in question denied him the right to have a voice in jury selection. Contrary to defendant’s contentions, however, we have never held that a juror’s concealment of any information during voir dire is by itself cause for automatic reversal.
 
 Rodriguez, Anderson
 
 and
 
 Buford
 
 recognize that the Legislature has enacted statutory protections that safeguard a defendant’s constitutional right to participate in jury selection and have an impartial jury. Indeed, in all three cases, the Court focused on whether the trial court properly disposed of a CPL 270.35 motion, and the result turned on whether the juror in question was “grossly unqualified” to serve, a determination that is not at issue on this appeal. Defendant argues not that these statutory protections are inadequate, but that we should create a constitutional rule requiring automatic reversal whenever a defendant claims he might have peremptorily excused a juror had he possessed certain information about that juror. We decline to adopt such a rule. Rather, because defendant moved to set aside the verdict pursuant to CPL 330.30 (2), we adhere to the well settled statutory analysis applicable to such cases.
 
 *
 

 
 *35
 
 CPL 330.30 (2) provides that, after the rendition of a verdict of guilty but before the sentence is imposed, the court may, upon the defendant’s motion, set aside the verdict. The court is authorized to do so if “during the trial there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict” (CPL 330.30 [2]). In addressing CPL 330.30 (2) motions, we have held that “[a]bsent a showing of prejudice to a substantial right, * * * proof of juror misconduct does not entitle a defendant to a new trial”
 
 (People v Irizarry,
 
 83 NY2d 557, 561 [1994]). We apply this standard because “not every misstep by a juror rises to the inherently prejudicial level at which reversal is required automatically”
 
 (People v Brown,
 
 48 NY2d 388, 394 [1979]). Indeed, the fact-intensive nature of these kinds of issues requires that “[e]ach case * * * be examined on its unique facts to determine the nature of the misconduct and the likelihood that prejudice was engendered”
 
 (People v Clark,
 
 81 NY2d 913, 914 [1993]). Accordingly, trial courts are vested with discretion in deciding CPL 330.30 (2) motions
 
 (see People v Maragh,
 
 94 NY2d 569, 574 [2000]), and this Court will uphold a trial court’s undisturbed findings of fact if they are supported by evidence in the record
 
 (see People v Ceresoli, 88
 
 NY2d 925, 926 [1996]).
 

 In response to defendant’s CPL 330.30 motion, the trial court held a hearing and heard testimony concerning the purported friendship between Cohen and Carey. They both testified that they had been friends in high school but lost touch for about 10 years after graduation. For most of those 10 years Cohen lived outside the country. A few weeks before defendant’s trial, Cohen contacted Carey and arranged for them to meet. Over lunch, the two caught up on each other’s lives and casually discussed the events of the intervening 10 years. There was also some general conversation about Carey’s job in the District Attorney’s office.
 

 When Cohen reported for jury duty, the judge asked him whether he knew anyone involved in law enforcement, including the District Attorney’s office. Cohen, “understanding the
 
 *36
 
 court’s inquiry and recognizing the relevance of his relationship to Mr. Carey,” chose not to disclose his friendship (183 Mise 2d 867, 868 [1999]). His reason, which Supreme Court in deciding the CPL 330.30 motion accepted as true, was that he wanted to be selected for defendant’s jury because the judge predicted that the trial would be relatively short. He believed that if he divulged his friendship with Carey, he might have been returned to the jury pool for another, possibly longer, case. Cohen had no contact with Carey during the trial and unequivocally stated that his relationship with Carey did not influence his deliberations in the slightest. Based on this testimony, the trial court determined that although Cohen’s failure to disclose the friendship constituted misconduct, it was “harmless” and did not result in substantial prejudice to defendant. The Appellate Division agreed.
 

 We are satisfied that the trial court’s undisturbed findings made after the CPL 330.30 hearing are supported by the record. Our review is therefore at an end
 
 (see Ceresoli,
 
 88 NY2d 925). We now turn to defendant’s second argument.
 

 III.
 

 At trial, defendant presented testimony from several alibi witnesses. Before they took the stand, defense counsel made it clear at a bench conference that he would be calling them solely as fact witnesses to avoid opening the door to questions about defendant’s character. The prosecutor stated that he “understood [defense counsel’s] point” and would approach the court before introducing any character evidence. In keeping with the understanding, the defense restricted the questioning of its witnesses to factual matters, being careful not to elicit any comment as to defendant’s character.
 

 In his summation, however, the prosecutor stated that “none of the defense witnesses testified that they were outraged and that the defendant couldn’t or wouldn’t have done this.” Defense counsel objected and asked to approach the bench, but the court overruled the objection, telling the jury, “These are arguments by counsel. You can accept or reject them. This case is decided solely on the evidence in this case, and that’s all.” After the prosecutor’s summation, defense counsel moved for a mistrial, claiming that the prosecutor’s reference to the defense witnesses’ lack of outrage was improper because the witnesses could not have expressed any such sentiment without bringing into the case defendant’s character and prior bad acts. The trial court denied the motion, concluding that the prosecutor’s comment went to the defense witnesses’ credibility.
 

 .
 

 
 *37
 
 On this appeal, defendant argues that the prosecutor’s comment insinuated that the defense witnesses had knowledge of defendant’s bad character or his propensity to commit the crime charged. The comment was even more objectionable, he contends, because the prosecutor was acutely aware of the reason the witnesses did not testify about any “outrage” or “surprise,” and yet betrayed the parties’ understanding by injecting the issue of defendant’s character. In response, the People argue that, when read in context, the prosecutor’s isolated remark was “part and parcel of his argument that nothing in the testimony of the defense witnesses showed that defendant ‘couldn’t’ have committed the crime.”
 

 The prosecutor’s comment was uncalled for in that it made an oblique reference to defendant’s character, which was not in evidence
 
 (see People v Ashwal,
 
 39 NY2d 105, 109-110 [1976];
 
 People v Kuss,
 
 32 NY2d 436, 442 [1973]). We conclude, however, that the error was harmless in light of the overwhelming evidence of defendant’s guilt
 
 (see People v Crimmins,
 
 36 NY2d 230, 241-242 [1975]).
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Graffeo and Read concur.
 

 Order affirmed.
 

 *
 

 Defendant has not argued, let alone established, that the friendship between Cohen and Carey would have justified a defense challenge for cause
 
 (cf. McDonough Power Equip., Inc. v Greenwood,
 
 464 US 548, 556 [1984];
 
 see also United States v Greer,
 
 285 F3d 158, 170-171 [2d Cir 2002];
 
 United States v Tucker,
 
 137 F3d 1016, 1026-1029 [8th Cir 1998];
 
 Gonzales v Thomas,
 
 99 F3d 978, 983-984 [10th Cir 1996]). Moreover, to the extent defendant raises a federal constitutional argument under the Sixth and Fourteenth Amendments, it also fails. The Supreme Court has held that, in cases of alleged juror partiality, the constitutional requirement of a fair and impartial jury is satisfied by holding a posttrial hearing
 
 (see Smith v Phillips,
 
 455 US 209 [1982]), as the trial court did here. Indeed, in stark contrast to defendant’s
 
 *35
 
 argument, the Court in
 
 Smith
 
 explained that “due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable”
 
 (id.
 
 at 217). We note that the particular provision at issue in
 
 Smith,
 
 which the Court found adequate, was CPL 330.30 (2).