THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REJEAN BROUSSEAU, Appellant. [52 NYS3d 534]—

McCarthy, J.P. Appeal from a judgment of the County Court

of Clinton County (McGill, J.), rendered November 13, 2014, upon a verdict convicting defendant of the crime of criminal possession of a forged instrument in the first degree.

Defendant was arrested in August 2012 for tendering eight uncontestedly counterfeit $100 bills, in United States currency, to a gas station clerk in the Town of Champlain, Clinton County. Thereafter, defendant was charged with criminal possession of a forged instrument in the first degree. In September 2014, a jury trial was held, after which defendant was found guilty as charged. In November 2014, the court sentenced defendant to time served and a $2,800 fine, plus mandatory fees. Defendant appeals, and we affirm.

Defendant's contentions on appeal are limited to challenges to the legal sufficiency of the evidence, or alternatively to the weight of the evidence, as to the requisite elements that defendant knew that the eight $100 bills were forged and that he intended to defraud, deceive or injure another by tendering them. "In conducting a legal sufficiency analysis, [this Court] view[s] the evidence in the light most favorable to the People and evaluate[s] 'whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged' " (*People v Graham*, 138 AD3d 1242, 1242 [2016], *lv denied* 28 NY3d 930 [2016], quoting *People v Bleakley*, 69 NY2d 490, 495 [1987]). As to weight of the evidence review, where a different finding would not have been unreasonable, this Court must, "like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Romero*, 7 NY3d 633, 643 [2006] [internal quotation marks and citations omitted]; *People v Olsen*, 124 AD3d 1084, 1085-1086 [2015], *lv denied* 26 NY3d 933 [2015]). "In reviewing the evidence, [this Court] accord[s] great deference to the jury's credibility determinations given its opportunity to hear the testimony and observe the witnesses' demeanor" (*People v Lopez-Aguilar*, 64 AD3d 1037, 1037 [2009] [citation omitted], *lv dismissed* 13 NY3d 940 [2010]).

"A person is guilty of criminal possession of a forged instrument in the first degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he [or she] utters or possesses any forged instrument," such as money (Penal Law § 170.30; *see* Penal Law § 170.15; *People v Bailey*, 13 NY3d 67, 70 [2009]). "An essential element of the offense of

criminal possession of a forged instrument is knowledge by the defendant that the instrument is forged" (*People v Johnson*, 65 NY2d 556, 560 [1985] [citations omitted]; *see* Penal Law §§ 15.05 [2]; 170.30). "The mere negotiation or utterance of a forged instrument cannot, of itself, establish a presumption that defendant had knowledge of the forged nature of the instrument" (*People v Johnson*, 65 NY2d at 561 [citations omitted]; *accord People v Silberzweig*, 58 AD3d 762, 762 [2009], *lv denied* 12 NY3d 920 [2009]). "Guilty knowledge of forgery may be shown circumstantially by conduct and events" (*People v Johnson*, 65 NY2d at 561 [citation omitted]; *accord People v Smith*, 138 AD3d 1248, 1250 [2016], *lv denied* 27 NY3d 1139 [2016]; *see People v Rodriguez*, 17 NY3d 486, 489 [2011]).

The attendant at the gas station at issue testified that she was working when defendant pulled in driving a semi-trailer truck with an attached camper. The attendant secured defendant's driver's license, as per policy for customers wishing to purchase diesel fuel without first providing a credit card, after which defendant dispensed $775 of diesel fuel. The attendant testified that, when defendant returned and began counting bills from a wad of money to pay for the fuel, she realized the bills were counterfeit "right off the bat" and "[j]ust by looking at" them. She checked the eight $100 bills that defendant had tendered with a counterfeit marker, confirmed that they were counterfeit and informed defendant of this fact. Defendant then gave the attendant eight authentic $100 bills. At some point, defendant asked the attendant to return the counterfeit bills to him, which request she refused.

The state trooper first dispatched to the scene testified that it was immediately apparent that the bills at issue were counterfeit, because "the paper felt wrong and the coloring was obviously not the right color. There were some that were very dark and some that were almost brightly colored." According to the trooper, defendant stated that he obtained the bills from an associate in Canada and that he did not know the bills were counterfeit. Defendant showed the trooper that he possessed 19 $100 bills, all of which were verified to be legitimate. Further, as the police investigator in charge of the case noted, the counterfeit bills are virtually identical copies of one another because the serial numbers and year of issuance are all the same.

Defendant, a Canadian citizen who testified on his own behalf, denied knowing that the eight $100 bills were forged when he tendered them to the clerk. As he had stated to authorities on the day in question, defendant testified that he

had obtained the bills in a currency exchange that he had conducted with a business owner that he knew in Canada. Defendant testified that he had first contacted a bank that had informed him that it would give him $.86 in United States currency in exchange for $1 of Canadian currency. Defendant then contacted the businessperson, with whom he had exchanged currency in the past, who indicated that he was willing to give defendant a vastly more favorable exchange rate: $1 in United States currency for $1 of Canadian currency. Defendant further testified that the businessperson ultimately gave him what he believed to be $4,000 in United States currency in exchange for defendant's $4,000 in Canadian currency. Defendant testified that he had not noticed anything unusual about the bills that he had received in the exchange and further explained that the reason he attempted to obtain the bills from the attendant after she identified them as counterfeit was to bring the bills back to the businessperson. From defendant's testimony, it is clear that, as a long-haul trucker, he had often traveled through the United States and paid for fuel in cash.

Thus, the trial evidence established that defendant had pumped enough fuel to use all eight of the counterfeit $100 bills that he possessed. At the time of the transaction, defendant had, among other bills, 35 $100 bills in United State currency on his person, eight of which were counterfeit.* Despite defendant's claims that he did not notice anything different about the counterfeit bills, defendant selected those exact eight counterfeit bills to pay for the fuel, without selecting one of the remaining 27 legitimate $100 bills. Further, according to defendant's own testimony, he knew that the exchange rate that he received from the businessperson was vastly more favorable than that which was offered by a legitimate financial institution. In addition, defendant had numerous authentic $100 bills on his person that would have provided a comparison between the authentic and counterfeit currency, particularly as to the differences in color and texture. Moreover, from defendant's acknowledgment of his frequent travels in the United States and his frequent use of cash at gas stations, one can reasonably infer defendant's general familiarity with authentic United States currency. Finally, the jury was able to consider the credibility of defendant's testimony in light of its opportunity to view and consider the counterfeit bills, particularly their color, texture and identical serial numbers and year of is-

---

* This accounts for the eight counterfeit $100 bills, the eight legitimate $100 bills that defendant used to pay for the diesel and the 19 legitimate $100 bills that defendant retained.

suance. Considering the circumstantial evidence, there is legally sufficient evidence to conclude that defendant knew that the eight $100 bills were counterfeit and that he tendered the bills with the requisite intent to defraud, deceive or injure another (*see People v Rodriguez*, 17 NY3d at 489-490; *People v Bickley*, 99 AD3d 1113, 1114 [2012], *lv denied* 20 NY3d 1009 [2013]). Moreover, and deferring to the jury's determination that defendant's testimony that he did not know that the bills were counterfeit was not credible, we find that the verdict is not against the weight of the evidence (*see People v Bickley*, 99 AD3d at 1114; *see generally People v Monteiro*, 93 AD3d 898, 900 [2012], *lv denied* 19 NY3d 964 [2012]).

Garry, Rose, Mulvey and Aarons, JJ., concur. Ordered that the judgment is affirmed.

