People v Hartle (2018 NY Slip Op 01515)





People v Hartle


2018 NY Slip Op 01515


Decided on March 8, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 8, 2018

109453

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
MARK A. HARTLE, Appellant.

Calendar Date: January 9, 2018

Before: Garry, P.J., Clark, Mulvey, Aarons and Pritzker, JJ.


John A. Cirando, Syracuse, for appellant.
Gary M. Pasque, District Attorney, Canton (Hannah E.C. Moore, New York Prosecutors Training Institute Inc., Albany, of counsel), for respondent.


Clark, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of St. Lawrence County (Champagne, J.), rendered August 15, 2016, upon a verdict convicting defendant of the crimes of rape in the first degree (four counts), criminal sexual act in the first degree (four counts), sexual abuse in the first degree (four counts), rape in the third degree (four counts), criminal sexual act in the third degree (five counts) and sexual abuse in the third degree (three counts).
Defendant was charged in a 31-count indictment with various sex crimes that occurred with a 15-year-old victim from the summer of 2014 to the fall of 2014. Prior to trial, County Court dismissed five counts of the indictment as multiplicitious, and,
during defendant's jury trial, dismissed two more counts because the evidence was legally insufficient to maintain those counts. At the conclusion of trial, defendant was convicted of rape in the first degree (four counts), criminal sexual act in the first degree (four counts), sexual abuse in the first degree (four counts), rape in the third degree (four counts), criminal sexual act in the third degree (five counts) and sexual abuse in the third degree (three counts). Prior to sentencing, defendant moved, pursuant to CPL 330.30, to set aside the verdict based upon improper conduct by one or more of the jurors. County Court found the motion to be untimely, and, in any event, without merit, and denied the motion without a hearing. Thereafter, County Court sentenced defendant to an aggregate prison term of 54 years, to be followed by 10 years of postrelease [*2]supervision [FN1]. Defendant now appeals, and we affirm.
Initially, as to defendant's contention that the indictment was facially defective in that it failed to specify the exact location and time at which the sexual offenses were committed, defendant did not raise this waivable deficiency in his motion to dismiss the indictment (see CPL 210.20, 210.25), and this claim is therefore unpreserved for our review (see People v Iannone, 45 NY2d 589, 600 [1978]; People v Slingerland, 101 AD3d 1265, 1265-1266 [2012], lv denied 20 NY3d 1104 [2013]; cf. People v Stauber, 307 AD2d 544, 545 [2003], lv denied 100 NY2d 599 [2003]).
We next consider defendant's arguments that the verdict was not supported by legally sufficient evidence and that it was against the weight of the evidence. As to the former contention, defendant avers that the evidence with respect to his convictions for rape in the first degree (counts 7, 12, 18, 28), criminal sexual act in the first degree (counts 4, 10, 16, 26) and sexual abuse in the first degree (counts 8, 14, 20, 30) was deficient in that the People failed to produce legally sufficient proof of the element of forcible compulsion to sustain those counts. "In conducting a legal sufficiency analysis, this Court views the evidence in the light most favorable to the People and evaluates whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Brousseau, 149 AD3d 1275, 1276 [2017] [internal quotation marks, brackets and citations omitted]; see People v Bleakley, 69 NY2d 490, 495 [1987]). As relevant here, "a [person] is guilty of rape in the first degree when he or she engages in sexual intercourse with another person by forcible compulsion" (People v Luckette, 126 AD3d 1044, 1045 [2015], lv denied 26 NY3d 1110 [2016]; see Penal Law § 130.35 [1]). "A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact [b]y forcible compulsion" (Penal Law § 130.65 [1]), and "[a] person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person . . . [b]y forcible compulsion" (Penal Law § 130.50 [1]). Forcible compulsion means, in relevant part, to compel by either "use of physical force" (Penal Law § 130.00 [8] [a]) or "a threat, express or implied, which places another person in fear of immediate death or physical injury to himself, herself or another person" (Penal Law § 130.00 [8] [b]).
At trial, the victim described in her testimony eight separate incidents of sexual offenses by defendant that began shortly after her fifteenth birthday in June 2014 and continued through the fall of 2014. The victim testified that defendant was a best friend to her father, that she had known defendant for all of her life and that her brother also had a close relationship with defendant. As to the four incidents that were alleged by the People to involve the element of forcible compulsion, the victim testified about two incidents that occurred during the summer of 2014 when the victim stayed overnight at defendant's home with one or more of her siblings. On each occasion, while sleeping on the couch, the victim was awoken by defendant, who pulled her into the bedroom and onto a bed whereupon defendant removed her clothes and had sexual intercourse with her. On both occasions, the victim resisted defendant's behavior by attempting to push him away and then dropping to the couch "[l]ike dead weight" to resist being pulled into the bedroom. During another incident, which occurred at the summer camp of the victim's family, defendant approached the victim in the shower area, pulled off her towel and clothing, despite the victim's attempt to pull away from defendant, who then pulled her onto a bed and [*3]engaged in various sexual acts with her, including intercourse. The victim further testified about an incident in November 2014 at defendant's home, where defendant awoke her and pulled her into the bedroom to engage in sexual activity with her. The victim testified that she did not try to resist because she was not awake yet and because she knew that defendant would not stop.
As to the crimes involving the element of forcible compulsion, we find that, when viewing the evidence in the light most favorable to the People, the People proffered legally sufficient evidence at trial so that a rational juror could conclude that the element of forcible compulsion was established beyond a reasonable doubt (see People v Lancaster, 121 AD3d 1301, 1303 [2014], lv denied 24 NY3d 1121 [2015]; People v Scanlon, 52 AD3d 1035, 1038 [2008], lv denied 11 NY3d 741 [2008]; People v Sehn, 295 AD2d 749, 750-751 [2002], lv denied 98 NY2d 732 [2002]). In so concluding, we are mindful that the forcible compulsion calculus must, as we have done here, take into consideration the young age of the victim, her relative size and strength compared to the adult defendant, defendant's close relationship to the victim and position of trust and authority within the victim's family and the victim's state of mind, including her expressed fear of telling her father about the incidents given his then close relationship with defendant (see People v Lancaster, 121 AD3d at 1303; People v King, 79 AD3d 1277, 1278 [2010], lv denied 16 NY3d 860 [2011]; People v Scanlon, 52 AD3d at 1038-1039; People v Vasquez, 49 AD3d 1282, 1284 [2008]). Moreover, our conclusion is buttressed by the principles that "forcible compulsion is not synonymous with violence" (People v Perazza, 288 AD2d 689, 691 [2001], lv denied 97 NY2d 707 [2002]; accord People v Luckette, 126 AD3d at 1046), and "for a sex offense to be predicated upon forcible compulsion 'neither physical injury nor screaming or crying out is required'" (People v Scanlon, 52 AD3d at 1038, quoting People v Alford, 287 AD2d 884, 886 [2001], lv denied 97 NY2d 750 [2002]; see People v Luckette, 126 AD3d at 1046). Therefore, the counts involving forcible compulsion were supported by legally sufficient evidence.
As to defendant's claim that the verdict was against the weight of the evidence, where, as here, an alternative verdict would not have been unreasonable, we must, "like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d at 495 [internal quotation marks and citation omitted]). Defendant contends that the victim's testimony was uncorroborated by any other evidence and that her narrative of the incidents is incredible because she continued to place herself around defendant in vulnerable settings. However, "[w]here, as here, credibility issues are presented, 'deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor'" (People v Tubbs, 115 AD3d 1009, 1010 [2014], quoting People v Romero, 7 NY3d 633, 644 [2006] [internal quotation marks and citation omitted]), and, significantly, "[w]hen reviewing a challenge to the weight of the evidence, we do not consider what the victim could or should have done" (People v Luckette, 126 AD3d at 1046; see People v Jackson, 290 AD2d 644, 646 [2002], lv denied 98 NY2d 711 [2002]). While the testimony of the victim's brother was limited to confirming that he and the victim were overnight guests at defendant's home numerous times during the time period in question and did not provide any further details regarding the sexual offenses, the jury was entitled to, and did, credit the victim's testimony in which she described in detail the eight incidents of sexual misbehavior by defendant. After conducting our independent and neutral review of the trial testimony and according, as we must, great deference to the jury's assessment of the credibility and demeanor of the victim, we cannot say that the victim's testimony is impossible of belief or manifestly untrue (see People v Voymas, 39 AD3d 1182, 1183 [2007], lv denied 9 NY3d 852 [2007]; People v Scanlon, 52 AD3d at 1038). We therefore find that the jury's verdict was not against the weight of the evidence (see People v Luckette, 126 AD3d at 1046; People v Sehn, 295 AD2d at 751).
Defendant also argues that he was deprived of a fair trial as a result of certain remarks made by the prosecutor during closing arguments. "In determining 'whether a reversal is warranted on this ground, we must assess the severity and frequency of the conduct, whether the trial court took appropriate action to dilute the effect of the conduct and whether, from a review of the evidence, it can be said that the result would have been the same absent such conduct'" (People v White, 79 AD3d 1460, 1464 [2010] [internal quotation marks and citation omitted], lvs denied 17 NY3d 791, 803 [2011], quoting People v De Vito, 21 AD3d 696, 700 [2005]). Applying that standard here, we conclude that reversal is not warranted. During summation, the prosecutor questioned whether the victim had any motive to lie and then answered that question by stating that the victim had "[a]bsolutely no motive to lie about this." While these remarks amounted to an improper and unnecessary characterization of the victim's testimony and her credibility (see People v Casanova, 119 AD3d 976, 978-979 [2014]; People v Levandowski, 8 AD3d 898, 900-901 [2004], appeal withdrawn 3 NY3d 740 [2004]), the challenged statements, in our view, were not pervasive or frequent and fell short of the sort of flagrant misconduct that would have deprived defendant of a fair trial (see People v Fomby, 101 AD3d 1355, 1357 [2012]; People v White, 79 AD3d at 1464-1465; People v McCombs, 18 AD3d 888, 890 [2005]). In addition, the comments were in direct response to defense counsel's summation, which focused on the victim's credibility and the lack of corroboration (see People v Morgan, 66 NY2d 255, 259 [1985]; People v Leonard, 83 AD3d 1113, 1117 [2011], affd 19 NY3d 323 [2012]; People v White, 79 AD3d at 1464; People v Molina, 79 AD3d 1371, 1377 [2010], lv denied 16 NY3d 861 [2011]).
We turn next to defendant's contention that County Court abused its discretion in denying his CPL 330.30 (2) motion, without a hearing, which was predicated upon defendant's allegation that one or more of the jurors had engaged in improper conduct by discussing defendant's prior rape prosecution, which had resulted in an acquittal. CPL 330.30 (2) provides that "[a]t any time after rendition of a verdict of guilty and before sentenc[ing]," a court may, upon motion by a defendant, set aside the verdict. The trial court is permitted to exercise such discretion if, "during the trial there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict" (CPL 330.30 [2]; People v Rodriguez, 100 NY2d 30, 35 [2003]; People v Davis, 149 AD3d 1246, 1248 [2017], lv denied 29 NY3d 1125 [2017]). "However, not every misstep by a juror rises to the inherently prejudicial level at which reversal is required" (People v Artis, 90 AD3d 1240, 1241 [2011] [internal quotation marks and citations omitted], lv denied 18 NY3d 955 [2012]; see People v Rodriguez, 100 NY2d at 35; People v Brown, 48 NY2d 388, 394 [1979]).
Defendant alleged in his motion that, following the jury's verdict, a private investigator interviewed two of the jurors who had learned in the jury room of defendant's prior rape prosecution. Defendant attached purported transcripts of the interviews to his motion. The unsworn transcripts of those interviews reflect that, while defendant's prior prosecution and acquittal may have been briefly mentioned in the jury room, the prior matter was "dismissed" by the jurors because they knew that it could not be used in their deliberations. In our view — and notwithstanding the procedural irregularities attendant to defendant's motion — there is no evidence that the jury's deliberative process was affected by improper influence or that the alleged conversations were so significantly prejudicial as to require a new trial, and, therefore, County Court acted within its discretion in denying the motion (see People v Kenyon, 108 AD3d 933, 941 [2013], lv denied 21 NY3d 1075 [2013]; People v Mattis, 108 AD3d 872, 876 [2013], lvs denied 22 NY3d 957 [2013]; People v Artis, 90 AD3d at 1242).
Finally, we do not find defendant's sentence or fine to be harsh or excessive. Given the [*4]serious and exploitive nature of defendant's crimes, his criminal history and lack of remorse, as well as the young age of, and his relationship with, the victim, we discern no abuse of discretion or any extraordinary circumstances that would warrant a reduction of the sentence in the interest of justice (see People v Glass, 150 AD3d at 1411-1412; People v Brown, 128 AD3d 1183, 1189 [2015], lv denied 27 NY3d 993 [2016]; People v Hughes, 114 AD3d 1021, 1025 [2014], lv denied 23 NY3d 1038 [2014]). Defendant's challenge to the qualifications of one of the jurors was not preserved by a timely and proper objection (see Mehar v City of New York, 260 AD2d 554, 556 [1999]; People ex rel. Ostwald v Craver, 272 App Div 181, 183 [1947]), and his remaining claims, including his assertion that his trial counsel provided ineffective assistance, have been reviewed and determined to be lacking in merit.
Garry, P.J., Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant's aggregate sentence is reduced, by operation of law, to 50 years in prison (see Penal Law § 70.30 [1] [e] [vi]; People v Glass, 150 AD3d 1408, 1409 n 1 [2017]).