# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 13
The People &c.,
   Respondent,
  v.
Fernando Ramirez,
   Appellant.

Felice B. Milani, for appellant.
Rosalind C. Gray, for respondent.

CANNATARO, J.:

New York guarantees the right of defendants to be present at all material stages of their criminal trial and to meaningfully contribute to their defense, including the opportunity to be present at jury selection and to observe the body language, facial expressions and demeanor of prospective jurors (NY Const, art, I §6; CPL 260.20; *People v Rodriguez*, 100 NY2d 30, 34-35 [2003]; *see People v Wilkins*, 37 NY3d 371, 374 [2021];

- 1 -

*People v Maffei*, 35 NY3d 264, 272 [2020]; *People v Williams*, 15 NY3d 739, 740 [2010]; *People v Favor*, 82 NY2d 254, 267 [1993]). On this appeal, defendant maintains that safety protocols implemented during the COVID-19 pandemic—namely social distancing and the requirement that prospective jurors cover their mouths and noses with a face mask when not being questioned individually—violated these rights because defendant could not see each prospective juror's entire face throughout the jury selection process. Because neither a defendant's right to be present during jury selection nor due process require that defendant have a simultaneous, unobstructed view of the entirety of every prospective juror's face during jury selection, we affirm.

I.

Defendant caused a three-car collision in the early morning hours of November 17, 2017 while driving on the South Service Road of Long Island Expressway in Hauppauge. One person died as a result of the crash and four others were seriously injured. A blood test performed later that day revealed that defendant's blood alcohol content was well above the legal limit. A search of defendant's vehicle performed by police revealed the presence of several alcoholic beverages, some opened and others unopened. Defendant was indicted on three counts of aggravated vehicular homicide, manslaughter in the second degree and various other crimes.

Defendant's trial commenced in April 2021. Due to the ongoing COVID-19 public health emergency, a number of safety protocols implemented throughout the New York State court system were employed during jury selection. Specifically, prospective jurors were advised that they would be "assigned specific seats, arranged in a socially distant

manner" and that they were required to wear a face mask at all times while inside the courthouse, but would be permitted to lower their masks and use a clear plastic face shield while being directly questioned.

Defense counsel objected to the safety measures, arguing that *People v Antommarchi* (80 NY2d 247 [1992]) entitled defendant to observe "every smile, every frown of a potential juror" and that the procedures prevented him from doing so. The court overruled the objection noting that prospective jurors were given plastic face shields and were instructed to lower their cloth masks while being questioned so that the attorneys could better see their facial expressions. Jury selection proceeded to conclusion with the safety measures being observed.

At trial, during the prosecution's opening statement, defense counsel moved for a mistrial after observing the decedent's surviving spouse crying in the courtroom. Counsel argued that defendant had been unfairly prejudiced as the crying might cause the jury to feel overly sympathetic towards the victim. The trial court denied the motion, noting that the decedent's surviving spouse was seated 15 feet behind defense counsel, that the court did not hear any crying and that, since the jury was even farther away than the judge, there was little likelihood the jury was aware of the crying. Nonetheless, the court directed the prosecutor to advise the decedent's surviving spouse that they should not cry during proceedings and that if they did, the court would exclude them from the courtroom. Further, the court offered to instruct the jury not to sympathize with either side, which the defense counsel declined.

Defendant was ultimately convicted of all twelve charged counts. The Appellate Division affirmed defendant's conviction, holding that there was no record support for the assertion that the safety procedures in place interfered with or deprived defendant of the ability to observe and assess prospective jurors (208 AD3d 897, 898-899 [2d Dept 2022]). The Court further concluded that, in view of the trial court's observations on the record that the surviving spouse's crying was inconspicuous and did not distract from the proceedings, that defendant was not entitled to a mistrial (208 AD3d at 899). A judge of this Court granted defendant leave to appeal (39 NY3d 1074 [2023]).

## II.

"A defendant has a constitutional right to a trial by a particular jury chosen according to law, in whose selection the defendant has had a voice" (*Rodriguez*, 100 NY2d at 33-34 [internal quotations omitted]). Additionally, CPL 260.20 confers a statutory right to be present during jury selection. The gravamen of a defendant's right to be present at jury selection is to "hear questions intended to search out a prospective juror's bias, hostility or predisposition to believe or discredit the testimony of potential witnesses and the venire person's answers so that they have the opportunity to assess the juror's facial expressions, demeanor and other subliminal responses" (*Antommarchi*, 80 NY2d at 250 [internal quotation marks and citation omitted]; *see People v Sloan*, 79 NY2d 386, 392 [1992]).

The key question in determining whether a defendant's exclusion from any phase of jury selection violates a right is whether the exclusion would have a substantial effect on the ability to mount a defense and the right is not violated where defendant's presence

would be "useless, or the benefit but a shadow" (*People v Velasco*, 77 NY2d 469, 473 [1991], *quoting Snyder v Massachusetts*, 291 US 97, 106-107 [1934]). We have previously held that the sidebar questioning of prospective jurors concerning their ability to participate as impartial jurors outside of the presence of the defendant violates the statutory right to meaningfully participate in jury selection (*see Antommarchi*, 80 NY2d at 250; *Sloan*, 79 NY2d at 392-393 ). Conversely, we have found no such violation when questioning was confined to "juror qualifications such as physical impairments, family obligations and work commitments," because such questioning does not have a "substantial effect on [a defendant's] ability to defend" (*Antommarchi*, 80 NY2d at 250; *see* CPL 260.20, *Velasco*, 77 NY2d at 473).

It is undisputed that defendant was present at all phases of jury selection. It is also undisputed that defendant was able to hear the questions posed to prospective jurors and to observe their responses including their "facial expressions, demeanor and other subliminal responses." Nonetheless, defendant argues that both he and his counsel were prevented from simultaneously observing the unobstructed facial expressions of all members of the venire, including those not being actively questioned, and that this deprivation violated defendant's right to fully participate in jury selection. Defendant cannot point to any authority supporting such a sweeping interpretation of the right to meaningful participation. Instead, defendant relies upon language from *Sloan* and its progeny to argue that he has a constitutional right to see all prospective juror's faces simultaneously. *Sloan,* which dealt with the defendant's exclusion from the side-bar questioning of individual prospective jurors on matters directly relevant to their "attitudes and feelings" concerning the defendant

and the facts of the case, did not recognize such a broad right (79 NY2d at 392). In fact, *Sloan* made no mention of potential jurors who are present in the jury room but who are not being questioned (*id.* at 390-391).[*] Plainly, *Sloan* is not instructive with respect to the circumstances presented here.

Even assuming the rights articulated in *Sloan* could be more broadly applied to non-questioned members of the venire, the safety protocols in use at defendant's jury selection were permissible as they did not impede defendant's ability to be present and observe the selection process. A defendant's right to be present at jury selection does not entail the absolute or unlimited ability to observe each prospective juror's facial expressions. After all, there is much more to body language than a person's nose or mouth; defendant could still observe a great deal about prospective jurors including their posturing, the position of their arms, and their eyes and eyebrows (*see United States v Trimarco*, 2020 WL 5211051, *5, 2020 US Dist LEXIS 159180, *15-16 [SD NY Sept. 1, 2020, 17-CR-583 (JMA) ] [a person's demeanor consists of more than just their mouth and nose]). As the People note, the mere fact that a particular trial procedure might be tactically preferable to a defendant does not mean that the procedure is constitutionally required. To the contrary, the safety protocols challenged here are in line with those upheld by numerous state and federal courts nationwide (*see eg*, *United States v Watkins*, 2021 WL 3732298, *6-7, 2021 US Dist

---

[*] Indeed, jury selection in New York often involves the questioning of individual jurors, or the questioning of the entire room of prospective jurors simultaneously (*see* 8 Carmody-Wait 2d § 55:35; 8 Carmody-Wait 2d § 55:36). In both scenarios it would be impossible for defendant to view all juror's faces simultaneously regardless of any masks.

LEXIS 160031, *18-20 [WD NY, Aug. 24, 2021, 18-CR-32-A] [masking requirements were in line with recommendations issued by the US Courts COVID-19 Judicial Task Force]; *United States v Crittenden*, 2020 WL 4917733, *8, 2020 US Dist LEXIS 151950, *22-23 [MD Ga., Aug. 21, 2020, 4:20-CR-7 (CDL)]; *People v Garcia*, 2022 COA 144, 527 P3d 410, 418 [Colo App 2022]; *Guerin v Commonwealth*, 658 SW3d 481, 484 [Ky Ct App 2022]; *Prince v State*, 255 Md App 640, 661-662 [Md Ct Spec App 2022]).

Moreover, the safety protocols in use at the time of trial did not violate defendant's due process rights (*see People v Standard*, 42 NY2d 74, 84-85 [1977] [due process not violated due to restriction of cross-examination in order to protect witness's safety]). "[D]ue process is a flexible constitutional concept calling for such procedural protections as a particular situation may demand" (*LaRossa, Axenfeld & Mitchell v Abrams*, 62 NY2d 583, 588 [1984]). Proper consideration of whether an individual's due process rights have been violated requires balancing "the interest of the parties to the dispute, the adequacy of the contested procedures to protect those interests and the government's stake in the outcome" (*id*.). Here, defendant asserts that he had an interest in viewing the entirety of prospective jurors' faces to aid in determining potential bias. The procedures in place afforded defendant an adequate opportunity to do so. Defendant was fully able to observe prospective jurors while they were being questioned, and even able to observe prospective jurors who were *not* being questioned, albeit with masks that covered their mouths and noses. This is at most a slight restriction, and permissible when weighed against the safety of all persons present in the court. Indeed, it would have been difficult, if not impossible, to conduct a jury trial with procedures that would permit a completely unobstructed view

of all prospective jurors until the pandemic had subsided.  Thus, the trial court properly balanced defendant's right to be present during jury selection with the safety of those present in the courtroom in accordance with due process considerations (*see LaRossa, Axenfeld & Mitchell*, 62 NY2d at 588).

III.

Turning to defendant's request for a mistrial, we see no reason to disturb the decision of the trial court (*see People v Michael*, 48 NY2d 1, 9 [1979]).  The court's observation that the spouse's crying was inconspicuous and that there was no indication that the jury heard it is entitled to deference (*see People v Batticks*, 35 NY3d 561 [2020]). Furthermore, the exploration of alternatives, such as instructing the People to speak with the spouse and offering defendant a curative instruction —which he rejected— justifies the decision not to grant the defendant's motion (*see People v Moore*, 71 NY2d 684, 688 [1988]; *People v Young*, 48 NY2d 995, 996 [1980]; *see also People v Baptiste,* 72 NY2d 356, 360 [1988] [A defendant may move for a mistrial pursuant to CPL 280.10(1) when there has been an "error or legal defect in the proceedings, or conduct inside or outside the courtroom (that is) prejudicial to the defendant and deprives him of a fair trial…"]). Finally, notwithstanding the trial court's efforts to temper the surviving spouse's courtroom reactions, there is no requirement that a trial judge keep courtroom spectators from displaying any emotion whatsoever absent prejudice to a party.

Accordingly, the order of the Appellate Division should be affirmed.

Order affirmed. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Troutman and Halligan concur.

Decided February 20, 2024